IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIK F. N.,[1]

           Plaintiff,

v.

COMMISSIONER, Social Security Administration,

           Defendant.

No. 1:19-CV-00778-HZ

OPINION & ORDER

HERNÁNDEZ, District Judge:

       Plaintiff brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). For the reasons that follow, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-governmental party's immediate family members.

1 - OPINION & ORDER

## BACKGROUND

Plaintiff was born on July 25, 1975 and was thirty-nine years old on April 1, 2015, the alleged disability onset date. Tr. 17, 26.[2] Plaintiff has at least a high school education and has no past relevant work. Tr. 26. Plaintiff claims he is disabled based on conditions including bipolar disorder, major depressive disorder, anxiety, and post-traumatic stress disorder. Tr. 19.

Plaintiff's benefits application was denied initially on August 31, 2015, and upon reconsideration on January 25, 2016. Tr. 17. A hearing was held before Administrative Law Judge John D. Sullivan on April 27, 2018. Tr. 38–59. ALJ Sullivan issued a written decision on May 23, 2018, finding that Plaintiff was not disabled. Tr. 17–27. The Appeals Council declined review, rendering ALJ Sullivan's decision the Commissioner's final decision. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 9.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 19.

At step two, the ALJ determined that Plaintiff had the "following severe impairments: bipolar disorder; major depressive disorder; anxiety; and mild posttraumatic stress disorder (PTSD)." Tr. 19.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 19–21.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC)

> to perform a full range of work at all exertional levels but with the following non-exertional limitations. He is limited to performing simple routine tasks and making simple work-related decisions. He is limited to occasional contact with the public, coworkers, and supervisors. Time off task will be accommodated by normal breaks.

Tr. 21.

At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 26. At step five, the ALJ relied on the testimony of a vocational expert (VE) to find that Plaintiff could perform jobs existing in significant numbers in the national economy. Tr. 26–27. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 27.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises three issues on appeal. He argues the ALJ erred in (1) excluding Plaintiff's moderate limitations related to concentration, pace, and persistence in the RFC; (2) rejecting Plaintiff's subjective symptom testimony; and (3) assigning little weight to the opinion of Dr. Alvord, a clinical psychologist.

### I.   Residual Functional Capacity Assessment

Plaintiff first challenges the ALJ's RFC assessment, arguing the ALJ erred in excluding Plaintiff's moderate limitations related to concentration, pace, and persistence.

When an ALJ makes a finding of moderate limitations in concentration, persistence, or pace in step three, those limitations must be reflected in the RFC assessment. *Saucedo v. Colvin*, No. 6:12-CV-02289-AC, 2014 WL 4631225, at *17–18 (D. Or. Sept. 15, 2014) (failure to include limitations regarding concentration, persistence, or pace in the RFC is reversible error if the ALJ found such limitations at step three); *see also Lubin v. Comm'r Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("The ALJ must include all restrictions in the [RFC] determination . . . including moderate limitations in concentration, persistence, or pace."). An ALJ's assessment that a plaintiff can perform "simple tasks" may "adequately capture[] restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). In *Stubbs–Danielson*, for example, the ALJ relied on medical testimony that the plaintiff retained the ability to perform simple tasks, notwithstanding some evidence that the plaintiff had deficiencies in pace. *Id.* at 1173–74. *Stubbs-Danielson* does not apply, however, to cases where the medical evidence establishes that the plaintiff has restrictions in concentration, persistence, or pace that are not captured in the RFC. *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) ("The medical testimony in *Stubbs–Danielson*,

5 - OPINION & ORDER

however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. *Stubbs–Danielson*, therefore, is inapposite.").

Here, at step three, the ALJ relied on medical evidence to determine that Plaintiff has moderate limitations in concentration, persistence, or pace. Tr. 20. However, while the RFC limits Plaintiff to "simple routine tasks," it does not include any limitations related to concentration, persistence, or pace. Tr. 21 The issue, then, is whether the RFC assessment sufficiently translates the ALJ's findings into functional limitations. The Court finds that it does not. *See Gartner v. Berryhill*, No. 6:16-cv-01505-SI, 2017 WL 3208351, *14 (D. Or. July 28, 2017) ("An RFC that limits Plaintiff to simple work does not incorporate Plaintiff's moderate difficulty with concentration, persistence, and pace."); *Becky B. v. Saul*, No. 6:19-cv-330-SI, 2020 WL 1244865 (D. Or. Mar. 16, 2020) (same). The ALJ therefore failed to fully capture Plaintiff's limitations, because the jobs the VE identified (laborer, salvage; meat clerk; hand packager), may still require focus and concentration despite being "simple routine tasks." *See Brink*, 343 F. App'x at 212 ("The hypothetical question to the vocational expert should have included not only the limitation to 'simple, repetitive work,' but also Brink's moderate limitations in concentration, persistence, or pace.").

## II. Subjective Symptom Testimony

Plaintiff also argues the ALJ improperly discounted his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533

F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons" (quotation marks and citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." (quotation marks and citations omitted)).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not identify evidence of

malingering. Tr. 22. However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. The ALJ found that "inconsistencies between the claimant's alleged onset date, work cessation, and longitudinal medical records," as well as "the evidence of record, including the claimant's longitudinal medical records, objective findings, and activities of daily living," undermined Plaintiff's "allegations regarding the intensity, persistency, and limiting effects of his symptoms and conditions." Tr. 22–23.

Plaintiff argues only that the ALJ erred in (1) relying on Plaintiff's statement about a 2011 hospitalization and (2) failing to identify *which* medical records, objective findings, and activities of daily living he relied on to discount Plaintiff's testimony.

The Court agrees that the ALJ erred in finding Plaintiff's statement about a 2011 hospitalization inconsistent with the medical record. Specifically, the ALJ found that while Plaintiff "testified that he was psychiatrically hospitalized in 2011," the "medical evidence of record contains no medical records from that alleged hospitalization." Tr. 22. As Plaintiff points out, however, progress notes confirm that Plaintiff was "[h]ospitalized at Mission Oaks after suicide attempt by overdose (Ativan)." Tr. 376. Thus, while the ALJ was technically correct that there are no records from this hospitalization, the Court does not agree that this *contradicts* Plaintiff statement that he was hospitalized in 2011.

However, Plaintiff ignores the other identified inconsistencies. For example, the ALJ noted that while Plaintiff testified that he stopped working in December 2011 because of his medical conditions, there are no medical records from this time period. Additionally, the ALJ noted that records from around April 2015, the alleged disability onset date, "show [Plaintiff] was tolerating his medications with no significant exacerbation in his mental conditions or

8 - OPINION & ORDER

symptoms that would support his assertion that he became disabled at that time." Tr. 23; *see* tr. 278 (May progress note stating "depression anxiety: has been doing well overall" and that Plaintiff was tolerating his medication well at its current dosage), tr. 279 ("tolerating [meds] well at the current doses");tr. 280 (February progress note stating that Plaintiff felt anxiety about an upcoming family court date in California, but was "managing depression ok and no problems with medications"). Plaintiff does not challenge these findings, and the Court sees no error.

Additionally, the ALJ also found that Plaintiff's mental health symptoms and conditions continued to be generally well controlled by medication. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may consider the effectiveness of treatment in evaluating a claimant's symptom testimony). Plaintiff does not challenge this finding. After reviewing the ALJ's citations, the Court finds that the ALJ did not err in relying on records that suggest Plaintiff's mental health symptoms and conditions were well managed with medication.

In sum, while the ALJ may have erred in relying on Plaintiff's statement about a 2011 hospitalization, he provided alternative clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's subjective symptom testimony.

### III.    Medical Opinion Evidence

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating

physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

> Here, the ALJ summarized Dr. Alvord's opinion as follows:
>
> Dr. Alvord diagnosed the claimant with bipolar affective disorder and mild PTSD. Dr. Alvord expressed "significant concerns" regarding the claimant's ability to maintain any level of consistency in a job setting, and he indicated that the claimant "will likely decompensate fairly rapidly" in a stressful work environment or if he is expected to function consistently. In a supplemental medical source statement, Dr. Alvord indicated that the claimant had moderate limitation in understanding, remembering, and carrying out complex instructions and making complex work-related decisions. He had no limitation in completing simple instructions and mild limitation in making simple work-related decisions. He had moderate limitation interacting with the public and marked limitation interacting with coworkers and supervisors. He also had marked limitation responding appropriately to usual work situations and changes in routine work setting. He would he absent from work more than four days per month.

Tr. 24. The ALJ gave this assessment "limited weight," finding it

> inconsistent with the record as a whole, including the normal objective findings of the in-person evaluation and the claimant's longitudinal medical records. Furthermore, Dr. Alvord provided no support or explanation for his opinions regarding marked limitation in interacting with others and adapting to changes, absenteeism, decompensation, or an inability to function consistently or sustain work activity. In addition, the undersigned notes that Dr. Alvord's statement regarding decompensation is ambiguous, as it is preceded by an introductory phrase lacking finite limitations (e.g., "will likely").

Tr. 24–25.

First, the ALJ's boilerplate assertion that Dr. Alvord's opinion was inconsistent with the record as a whole, including with Plaintiff's longitudinal medical records, does not constitute a specific and legitimate reason to discount his opinion. *See Garrison*, 759 F.3d at 1012–13 ("An ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."). Similarly, to the extent the ALJ relies on inconsistencies with Dr. Alvord's own "normal objective findings," the ALJ fails to identify *which* normal objective findings he relies on. To the extent the ALJ intended to rely on the WMS IV and WASI II test results, or Dr. Alvord's finding that Plaintiff's speech "was within normal limits," the ALJ fails to explain *how* these objective findings are inconsistent with Dr. Alvord's opinion that, for example, Plaintiff "had moderate limitation in understanding, remembering, and carrying out complex instructions and making complex work-related decisions." Tr. 24, 452. Without this additional information, the Court cannot find the ALJ's reasoning specific and legitimate.

The ALJ also discounted Dr. Alvord's opinion, however, because he provided no support or explanation for the limitations he assessed in the check-box portion of the report. "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v. Saul*, 950 F.3d 1141 (9th Cir. 2020). "While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Id.* (internal quotation and citations omitted). Here, Dr. Alvord checked boxes indicating that Plaintiff would have some marked limitations and would miss more than four days of work per month. He did not, however, provide any explanation for his opinion or respond to the request from Plaintiff's attorney to

"identify the factors . . . that support [his] assessment." Tr. 451–54. The Court sees no explanation in Dr. Alvord's psychological evaluation and, because he did not treat Plaintiff, there are no treatment records to review.[3] The ALJ did not, therefore, err in giving limited weight to Dr. Alvord's opinion on this basis.

Lastly, Plaintiff argues that the ALJ erred in finding that "Dr. Alvord's statement regarding decompensation is ambiguous, as it is preceded by an introductory phrase lacking finite limitations (e.g., 'will likely')." Tr. 25. Defendant does not respond to this argument. Given the Court's conclusion that the ALJ did not err in relying on the lack of support and explanation for the assessed limitations, any error as to the decompensation limitation in particular is harmless. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (any error was harmless in light of the ALJ's other reasons to support the credibility and residual functional capacity findings).

## IV.     Remand for Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence. *Garrison*, 759 F.3d at 1020. Second, the

---

[3] The Court also does not agree that the ALJ's duty to develop the record was triggered here. Dr. Alvord's opinion was not ambiguous or unclear; it was simply unsupported. The rejection of a single medical opinion in an otherwise adequate record does not automatically trigger the duty to develop the record. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("Rejection of the treating physician's opinion on ability to perform any remunerative work does not by itself trigger a duty to contact the physician for more information."). Here, the overall record, including opinions by state agency psychological consultants, was not inadequate to evaluate Plaintiff's RFC.

record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff argues that remand for an award of benefits is appropriate. This case, however, is not one with "rare circumstances" justifying that type of remand. While the ALJ failed to account for Plaintiff's limitations in concentration, persistence, or pace in the RFC assessment, the ALJ did not err in discounting Plaintiff's subjective symptom testimony or Dr. Alvord's opinion. The record has not been fully developed and further proceedings would be useful.

## CONCLUSION

The decision of the Commissioner is reversed and remanded for further administrative proceedings.

IT IS SO ORDERED.

Dated: _____July 22, 2020_____.

_Marco Hernandez_
MARCO A. HERNÁNDEZ
United States District Judge

13 - OPINION & ORDER